**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| Kenneth Patrick Goodwin, | ) | Cr. No. 3:07-170-MBS |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| United States of America, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Kenneth Patrick Goodwin ("Petitioner"), is currently in custody of the Federal Bureau of Prisons pursuant to a commitment order from the United States District Court for the District of South Carolina.  Petitioner, proceeding *pro se*, filed the within § 2255 motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on May 21, 2009.  The United States of America ("Respondent") filed a response and a motion for summary judgment on July 20, 2009. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court issued an order on July 20, 2009, advising Petitioner of the summary judgment procedure and the possible consequences if he failed to respond adequately.  On July 27, 2009, Petitioner filed a motion for summary judgment. On December 11, 2009, Petitioner replied to Respondent's response.  Petitioner also seeks reconsideration of a court order clarifying his release date.  On November 15, 2010, Respondent filed a response to Petitioner's motion for reconsideration.  On February 17, 2011, Petitioner filed a reply. On February 24, 2011, Petitioner filed a supplemental reply.

## I.  FACTS

Petitioner was the sole defendant named in a one-count indictment with forfeiture allegations filed on February 21, 2007.  Count One of the Indictment charged that on or about May 25, 2006,

Petitioner knowingly, intentionally, and unlawfully did possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1).  On March 5, 2007, Petitioner was arrested pursuant to a warrant.  Magistrate Judge Joseph R. McCrorey arraigned Petitioner that same day and set a $250,000 secured bond.  On May 14, 2007, Respondent filed an information notifying Petitioner that he was subject to increased penalties pursuant to 21 U.S.C. § 851 based upon an October 29, 1998 conviction for conspiracy to possess with intent to distribute and distribution of marijuana, cocaine, and cocaine base.

On May 22, 2007, Petitioner entered into a plea agreement, agreeing to plead guilty to Count One of the indictment.  In paragraph six of the plea agreement, Petitioner agreed that if he "fail[ed] to comply with any of the provisions of [the plea agreement] . . . the Government w[ould] have the right, at its sole election, to void all of its obligations under [the plea agreement] and [Petitioner] w[ould] not have any right to withdraw his plea of guilty. . . ."  Entry 23 ¶ 6.

In paragraph seven of the plea agreement, Petitioner agreed:

[T]o be fully truthful and forthright with federal, state and local law enforcement agencies by providing full, complete and truthful information about all criminal activities about which he has knowledge. . . .  The failure of the Defendant to be fully truthful and forthright at any stage will, at the sole election of the Government, cause the obligations of the Government within this Agreement to become null and void. Further, it is expressly agreed that if the obligations of the Government within this Agreement become null and void due to the lack of truthfulness on the part of the Defendant, the Defendant understands that: (1) the Defendant will not be permitted to withdraw his plea of guilty to the offenses described above[;] (2) any and all additional charges known to the Government may be filed in the appropriate district[;] (3) the Government will argue for a maximum sentence for the offense to which the Defendant has pleaded guilty; and (4) the Government may use any and all information and testimony provided by the Defendant in the prosecution of the Defendant of all charges.

2

*Id.* ¶ 7.  In paragraph eight of the plea agreement, Petitioner agreed that if he failed to pass a polygraph examination, Respondent's obligations under the plea agreement could be voided at the sole discretion of Respondent.  *Id.* ¶ 8.  In paragraph nine of the plea agreement, Respondent agreed that any self-incriminating information provided by Petitioner as a result of his cooperation, although available to the court, would not be used in determining Petitioner's guideline range, unless Petitioner breached the plea agreement.  *Id.* ¶ 9.  In paragraph ten, Petitioner stipulated that he had a prior felony drug conviction that subjected him to enhanced penalties and that Respondent filed an information with regard to this conviction.  *Id.* ¶ 10.  Petitioner also agreed not to object to the information.  *Id.*  In paragraph eleven, Petitioner agreed that if he complied with the plea agreement and provided substantial assistance to the government in the investigation or prosecution of another person, the government would withdraw the enhancement at sentencing.  Entry 23 ¶ 11.  In paragraph twelve, Petitioner agreed that if he was unable to provide substantial assistance prior to sentencing, but subsequently provided substantial assistance, Respondent would move for Petitioner's sentence to be reduced pursuant to Fed. R. Crim. P. 35.  *Id.* ¶ 12.  In paragraph fifteen, Petitioner agreed to waive his rights to request or receive records pertaining to the investigation or prosecution of his case, including pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (FOIA) and the Privacy Act, 5 U.S.C. § 552a.  *Id.* ¶ 15.  In paragraph 16, Petitioner and Respondent agreed that the plea agreement contained the entire agreement of the parties.  *Id.*

On May 24, 2007, the court held a change of plea hearing.  At the change of plea hearing, the court explained to Petitioner that if his prior conviction was not used against him, he would face a minimum term of five years (60 months) of imprisonment, and that if the prior conviction were used, he would face a minimum term of ten years (120 months) of imprisonment.  Change of Plea Tr.

18:10-18.  Petitioner affirmed that he understood the possible penalty he faced.  *Id.* 19:6-8.

Respondent summarized the terms of the plea agreement, including:1) the cooperation provision;

2) the consequences of Petitioner's failure to abide by the terms of the plea agreement; and 3) the

agreement with regard to the enhancement.  *Id.* 19:25-23:14.  Petitioner affirmed that he understood

that the court was not bound by any agreement between Petitioner and Respondent, and that the court

had complete discretion with regard to Petitioner's sentence.  *Id.* 27:1-5.  Petitioner also affirmed

that he had agreed to take a polygraph and that if he did not pass it to the satisfaction of Respondent,

the plea agreement would be null and void.  *Id.* 27:10-13.  Petitioner confirmed that the plea

agreement represented the entire agreement that Petitioner had with Respondent, and that no one had

promised Petitioner what sentence he would receive.  Change of Plea Tr. 27:17-22.  Petitioner also

confirmed that other than the plea agreement, no one had promised him anything or held out any

hope of reward to get Petitioner to plead guilty.  *Id.* 28:16-19.

During the hearing, the court determined that the plea agreement provision waiving

Petitioner's rights to request or receive records related to his case was not a negotiated term of the

agreement and that Petitioner derived no benefit from this waiver.  Change of Plea Tr. 23:15-25:16,

26:11-21.  Both parties consented to strike this waiver from the plea agreement, resulting in an

amended plea agreement.  *Id.*

On September 10, 2007, Respondent moved to hold Petitioner in breach of the plea

agreement based upon his failure of a polygraph examination on September 7, 2007.  On June 11,

2008, Petitioner and Respondent entered into an addendum to the plea agreement.  In the addendum,

Petitioner and Respondent stipulated that Petitioner failed the polygraph examination and that

Petitioner was therefore no longer entitled to the withdrawal of the sentencing enhancement based

4

upon his prior conviction. Entry 45 ¶ 1. Furthermore, in exchange for Petitioner's waiver of his right to contest his conviction and/or sentence, and his right to request or receive records pertaining to his case, Respondent agreed: 1) that the information provided by Petitioner in his proffer debriefing should not be used to enhance his drug weights under the sentencing guidelines; and 2) to recommend that Petitioner be sentenced to the statutory mandatory minimum sentence of 120 months incarceration. *Id.* ¶¶ 2-4. Petitioner and Respondent further agreed that the plea agreement together with the addendum contained the entire agreement of the parties and superseded all prior promises, representations and statements of the parties. *Id.* ¶ 9.

On June 12, 2008, the Court held a sentencing hearing, but granted the parties a continuance to further consider the implications of Petitioner's possible breach of the plea agreement and further amend the addendum to the plea agreement. On June 18, 2008, Petitioner and Respondent entered into an amended addendum to the plea agreement, which replaced the addendum to the plea agreement. Entry 48. In the amended addendum, Petitioner acknowledged that his agreement with Respondent with regard to the proffer information and Respondent's sentencing recommendation was not binding upon the court. Entry 48 ¶ 3. Petitioner and Respondent agreed that the plea agreement together with the amended addendum contained the entire agreement of the parties and superseded all prior promises, representations and statements of the parties. *Id.* ¶ 10.

On June 18, 2008, the court held Petitioner's sentencing hearing. Because the amended addendum to the plea agreement changed the substance of the plea agreement entered into on May 24, 2007, the court performed a second plea colloquy. *See* Sentencing Tr. 3:6-8, 3:9-15:23. During the plea colloquy, Respondent summarized the terms of the plea agreement as well as the amended addendum to the plea agreement, and Petitioner agreed that the summary was accurate. *Id.* 6:22-

12:3, 13:9-12. The court specifically addressed the addition of an appeal and post-conviction rights wavier and records waiver in the amended addendum to the plea agreement; and Respondent and Petitioner's counsel informed the court that these waivers were in exchange for Respondent's agreement to argue for a sentence of 120 months. *Id.* 12:9-13:8.

The court informed Petitioner that because he stipulated that he had violated his plea agreement, the court could choose to consider the information about drug weights from Petitioner's proffer, which would place his sentence above the 120 month sentence that Respondent said it would argue for. Sentencing Tr. 13:23-14:3. The following exchange took place between Petitioner and the court:

> The court: Just so that you will understand the impact of the violation of the plea agreement, if as a result of the violation of the plea agreement, if the drug weights from your proffer were to be used you would be held accountable for 43.31 kilograms of powder cocaine, which would result in a guideline range of 188 to 235 months based on an offense level of 34 and a criminal history category of three. Do you understand that?
>
> Defendant: Yes, ma'am.
>
> The court: So if the court decides that it does not want to abide by the stipulation I can sentence you to a - - and I want to consider all of the drug weights from your proffer, which I would be able to do under the agreement that you've entered into, your guideline range would be 188 to 235 months and I could sentence you in that range. Do you understand that?
>
> Defendant: Yes, ma'am.
>
> The court: All right. Understanding that do you still want to go forward with this amended addendum to the plea agreement?
>
> Defendant: Yes, ma'am.

Sentencing Tr. 14:5-25. Petitioner affirmed that he believed that it was in his best interests to enter into the amended addendum and that he understood that he waived certain rights in the amended

6

addendum. *Id.* 13:9-18. The court asked Petitioner whether anyone had promised him anything to entice him into entering into the amended addendum, to which Petitioner responded "No, ma'am." Sentencing Tr. 15:8-11. Petitioner denied that anyone had promised him what his sentence was going to be. *Id.* 15:12-14. Petitioner affirmed that he was entering into the amended addendum under his own free will and accord. Sentencing Tr. 15:15-18. The court accepted the amended addendum to the plea agreement. *Id.* 15:21-22.

Moving forward with the sentencing, the court noted that the presentence investigation report did not reference the revised drug weights that would be in effect if the drugs in the proffer were used. *Id.* 16:7-10. The court explained:

> If the presentence report had included the drug weights that were included in the proffer the guideline range would have been a - - would have been an offense level of 34, which would have been a guideline range of 188 to 235. So as far as sentencing is concerned, I can sentence you up to that level. Do you understand that?

*Id.* 17:1-6. Petitioner affirmed that he understood this. *Id.* 17:7. The court stated that Petitioner was subject to a mandatory minimum sentence of ten years, which was also the guidelines range. *Id.* 16:11-12, 18. The court explained that "[a]bsent the enhanced penalty [which would not have been used had Petitioner not violated the plea agreement], [Petitioner]'s guidelines range would have been 60 to 71 months." Sentencing Tr. 16:18-21. Petitioner affirmed that he understood the affect of his breach of the plea agreement on his guidelines range. *Id.* 16:25.

When given an opportunity to speak with regard to the sentence to be imposed, Respondent argued that Petitioner should receive a 120 month sentence as agreed. Sentencing Tr. 20:1. The court sentenced Petitioner to the mandatory minimum of 120 months imprisonment and eight years of supervised release. The court stated: "This sentence is imposed to run concurrently to the federal

custody sentence that's imposed on case number 3:06-603 in accordance with the United States Sentencing Guidelines 5G1.3C."[1]  Sentencing Tr. 20:14-17.  No notice of appeal was filed.

On May 4, 2010, Respondent filed a motion to reduce Petitioner's sentence to 70 months based upon Petitioner's substantial assistance in a murder trial pursuant to Fed. R. Crim. P. 35(b). On May 11, 2010, the court granted Respondent's motion to reduce Petitioner's sentence.  The court reduced Petitioner's sentence to 70 months to run "concurrently with the sentence imposed in CR 3:06-603 in accordance with [United States Sentencing Guideline] § 5G1.3(c)," which reduction both Petitioner and Respondent consented to.   Entries 112, 113.

On July 8, 2010 and again on August 17, 2010, Petitioner sought a ruling that his 70 month sentence was to run fully concurrent with the sentence previously imposed on him in case 3:06-603, because his previous sentence of 120 months had been run fully concurrent with the sentence in case 3:06-603.   On October 5, 2010, the court entered a text order stating that although Petitioner's original sentence was calculated to run fully concurrent with the sentence imposed in CR 3:06-603, this was a calculation error.  The court noted that 18 U.S.C. § 3585 prevented Petitioner's sentence from running fully concurrent to the sentence imposed in case 3:06-603 because a sentence cannot begin before it is imposed.[2]  When Petitioner's sentence was reduced, the BOP corrected its error to conform with § 3585.  Therefore, the court found that Petitioner's sentence could not be run fully

---

[1]    Petitioner's conviction in CR 3:06-603 was for conspiracy to make, sell, receive, and deliver counterfeited and altered obligations of the United States in violation of 18 U.S.C. §§ 371, 471, and 473.  On January 24, 2007, Petitioner was sentenced to 18 months imprisonment for this conviction.

[2]    Specifically, pursuant to § 3585, Petitioner's sentence of 120 months, which was later reduced to 70 months, could not begin before June 18, 2008, the date on which it was imposed.  Thus, Petitioner's sentence in this case could only run concurrently with the sentence imposed in CR 3:06-603 from June 18, 2008 forward.

concurrent with the sentence in 3:06-603, and that Petitioner's release date had been correctly calculated after Petitioner's sentence was reduced.

## II.  SUMMARY JUDGMENT STANDARD

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown by citing to the record "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The moving party bears the burden of proving that there are no facts from which a jury could draw inferences favorable to the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Id.*  Summary judgment should only be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material facts and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Tr. of Maryland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992).

9

## III.  DISCUSSION

**A.      § 2255: Ineffective Assistance of Counsel**

Petitioner contends that he was provided ineffective assistance of counsel at sentencing.  To prove ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient when it is not reasonable under prevailing professional norms.  *Id.* at 688.  *Strickland* requires Petitioner to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *See id.* at 690.  The court then must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.*  There is a strong presumption that defense counsel's conduct is within the wide range of reasonable professional assistance, and the court is required to grant broad deference to scrutinizing an attorney's performance.  *Id.* at 688-89.

Petitioner also must demonstrate that he was prejudiced by trial counsel's alleged deficient performance, in that because of trial counsel's unprofessional errors, the result of the proceeding would have been different.  *See id.* at 694.  Therefore, even if counsel's performance is outside the wide range of professional assistance, an error by counsel will not warrant setting aside the conviction if the error had no effect on the judgment.  *Id.* at 694.  Moreover, when challenging a guilty plea premised on ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that, but for counsel's errors, the defendant would not have pleaded guilty, and would have insisted on going to trial.  *Hill v. Lockhart*, 474 U.S. 52, 58-59, (1985).

1.    <u>60 Month Sentence</u>

Petitioner contends that counsel was ineffective in that he failed to "object at Sentencing or file a Specific Performance Motion compelling the Government to stand by its previously executed 60 month Plea Agreement." Entry 59 at 5.   Petitioner contends that his May 2007 plea agreement provided for "a 60 month sentence and a waiver whereby the Government would not seek enhancement under 21 U.S.C. § 851," and that he was sentenced to 120 months in violation of this agreement. *Id.* Petitioner contends that the "60 month sentence is implicit and not explicit to the Plea Agreement" and that "based on conversations with his attorney, [Petitioner] was led to believe that he would receive a 60 month sentence." Entry 108 at 2. Petitioner contends that he "would not have entered into a Plea Agreement with the United States HAD it offered him 120 months INSTEAD of the 60 months agreed upon by the Government." Entry 59 at 5 (emphasis in original).

A defendant's declarations during his or her plea colloquy in open court affirming a plea agreement "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Such statements "present 'a formidable barrier in any subsequent collateral proceedings.'" *United States v. White*, 366 F.3d 291, 295-96 (4th Cir. 2004) (citing *Blackledge*, 431 U.S. at 74). The reason for this is that courts must be able to rely on the defendant's statements made under oath during a Rule 11 plea colloquy. *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003); *see Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975) ("[T]he accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so."). Therefore, if at the Rule 11 hearing, the court corrects or clarifies "earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's

11

advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant." *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992).

Petitioner's claims are contradicted by the terms of the plea agreement and the amended addendum to the plea agreement, as well as Petitioner's statements at the plea colloquies and at sentencing. In paragraph eight of the plea agreement, Petitioner agreed that if he failed to pass a polygraph examination, Respondent's obligations under the plea agreement could be voided at the sole discretion of Respondent. *Id.* ¶ 8. In paragraph ten, Petitioner stipulated that he had a prior felony drug conviction that subjected him to enhanced penalties. *Id.* ¶ 10. In paragraph eleven, Petitioner agreed that if he complied with the plea agreement, and provided substantial assistance to the government in the investigation or prosecution of another person, the government would withdraw the enhancement at sentencing. Pl. Agmt. ¶ 11. At Petitioner's May 24, 2007 change of plea hearing, the court explained to Petitioner that if his prior conviction were used against him, he would face a minimum term of imprisonment of ten years, and Petitioner confirmed he understood this possible penalty. Change of Plea Tr. 18:10-18, 19:6-8. Subsequently, Petitioner entered into the amended addendum to the plea agreement in which Petitioner stipulated that he failed a polygraph examination and that, as a result, Petitioner was no longer entitled to the withdrawal of the sentencing enhancement based upon his prior conviction. Amend. Adden. Pl. Agmt. ¶ 1. At sentencing, the court explained to Petitioner that he was subject to a mandatory minimum sentence of ten years. Sentencing Tr. 16:18-21. Petitioner affirmed that he understood the affect of the amended addendum to the plea agreement on his guidelines range. *Id.* 16:25. Accordingly, Petitioner knew at sentencing that he was subject to a ten year, or 120 month, mandatory minimum. Therefore, Respondent's motion for summary judgment is granted as to this ground for relief.

2.     Alteration of the Plea Agreement

Petitioner contends that he received ineffective assistance of counsel when counsel "did not contest the modification of the Plea Agreement" at sentencing. Entry 108 at 3. Petitioner contends that at his sentencing hearing, Respondent produced a modified plea agreement and that the court indicated that "the modification of the Plea Agreement wasn't allowable." Entry 108 at 3. Petitioner contends that the impermissible modifications include "section 3 in the addendum to the Plea Agreement, and section 5 in the Amended Addendum to Plea Agreement, both of which the judge personally requested to be removed from the Plea Agreement on May 24, 2007." Entry 108 at 3. Petitioner also contends that these changes are not justified by his failure of the polygraph because the statement that Petitioner made that led to his failure of the polygraph "was not made in connection with this case." Entry 108 at 4. Petitioner further contends that the polygraph results were never introduced in court and that the government waited until June 11, 2008 "approximately nine and one half of months [sic] after said polygraph" to complain of the breach, all the while continuing to receive cooperation from Petitioner. Entry 108 at 4.

Petitioner's contention that Respondent improperly altered his plea agreement is contradicted by the record. At Petitioner's sentencing hearing, the court performed a new plea colloquy to ensure that Petitioner understood the terms of the amended addendum to the plea agreement and was entering into the agreement voluntarily. Respondent summarized the terms of the plea agreement as well as the amended addendum to the plea agreement, and Petitioner agreed that the summary was accurate. *Id.* 6:22-12:3, 13:9-12. Moreover, the court determined that Petitioner's waivers of his appeal rights, post conviction rights, and rights to receive documents were properly negotiated; and accepted the amended addendum to the plea agreement. *Id.* 12:9-13:8. The court did not determine

that sections or paragraphs three and five of the amended addendum to the plea agreement were impermissible.[3]

Petitioner's contentions with regard to the events following his failure of the polygraph are also contradicted by the record. In paragraph eight of the plea agreement, Petitioner agreed that if he failed to pass a polygraph examination, Respondent's obligations under the plea agreement could be voided at the sole discretion of Respondent. *Id.* ¶ 8. This included Respondent's agreement to withdraw the enhancement based upon Petitioner's prior conviction in exchange for substantial assistance. *See* Pl. Agmt. ¶¶ 11-12. The polygraph provision was not conditioned upon Petitioner's statements being made in connection with this case. Pl. Agmt. ¶ 8. Moreover, Respondent did not wait nine and one half months to move to hold Petitioner in violation of his plea agreement while continuing to receive Petitioner's cooperation. Instead, Respondent moved to hold Petitioner in violation of his plea agreement on September 10, 2007, three days after Petitioner's polygraph examination. Finally, Respondent did not need to produce evidence of Petitioner's polygraph failure to the court in support of its motion to hold Petitioner in breach of his plea agreement in this case because Petitioner stipulated in the amended addendum to the plea agreement that he had failed the polygraph examination, and was therefore not entitled to the withdrawal of the sentencing enhancement. Because the record contradicts Petitioner's claims that the plea agreement was

---

[3]    With regard to Petitioner's original plea agreement, the court determined that a provision waiving Petitioner's right to request records pertaining to his case in the original plea agreement had not been properly negotiated. Change of Plea Tr. 23:15-25:16, 26:11-21. The parties agreed to strike that waiver from the original plea agreement. After Petitioner failed the polygraph, however, the court permitted Petitioner to waive his appeal and post-conviction rights, as well as his right to request records pertaining to his case in the amended addendum to the plea agreement based upon the explanation of both parties that these waivers were in exchange for Respondent's agreement to argue for a 120 month sentence. Sentencing Tr. 12:9-13:8.

14

improperly altered by Respondent, counsel could not have been deficient in failing to object to such alterations. Respondent's motion for summary judgment is granted as to this ground for relief.

     3.    <u>Proffer Testimony</u>

     Petitioner contends that counsel was ineffective "when he did not object to the Government's use and presentation of Defendant's Proffer testimony in a prior, wholly unrelated case, to enhance his sentence from 60 months, as agreed upon in the Plea Agreement, to 120 months at sentencing." Entry 59 at 6. Petitioner contends that if counsel had objected "to the admittance of the Proffer . . . the District Court would not have enhanced [his] sentence from 60 months to 120 months." Petitioner also contends that the use of his proffer improperly placed him in the guidelines range of 188 to 235 months "with no due process." Entry 108 at 6. Petitioner further contends that Respondent improperly used the information from his proffer to as "leverage" to coerce Defendant into pleading guilty. Entry 108 at 7. Specifically, Petitioner contends that after he was held in breach of the plea agreement, Respondent gave Petitioner two options: "1) accept the <u>recommendation</u> on their terms[,] or 2) Stand to possibly receive 255 months due to the use of the preferred [sic] statements." *Id.* Petitioner contends that this coercion renders his guilty plea voidable. *Id.*

     Petitioner's claim that Respondent used his proffer testimony to enhance his sentence from 60 months to 120 months is not supported by the record. Petitioner's proffer statements were not used to "enhance" Petitioner from 60 months to 120 months. Instead, when Petitioner stipulated that he had failed a polygraph test and was no longer entitled to the withdrawal of the sentencing enhancement based upon his prior conviction, Petitioner became subject to a 120 month mandatory minimum sentence instead of the 60 month mandatory minimum. 21 U.S.C. § 841(b)(1)(B).

Petitioner affirmed for the court at sentencing that he understood the affect of his breach of the plea agreement on his potential sentence. Sentencing Tr. 16:18-25. Because Petitioner's proffer was not used to enhance Petitioner from 60 to 120 months, counsel could not have been deficient for failing to object to the alleged use of Petitioner's proffer statements.

With regard to the 188 to 235 guidelines range, the amended addendum to the plea agreement makes clear that: 1) Respondent agreed that Petitioner's proffer statements should not be used to enhance his drug weights under the sentencing guidelines; 2) Respondent agreed to argue for a 120 month sentence; and 3) Petitioner acknowledged that the agreement that his drug weights would not be enhanced and Respondent would recommend a sentence of 120 months were not binding upon the court. Amend. Adden. Pl. Agmt. ¶¶ 2, 3. Petitioner was asked about this agreement during the court's second plea colloquy and affirmed he understood the agreement. Accordingly, counsel was not deficient for failing to object to the very agreement Petitioner ratified. Moreover, the sentencing transcript shows that although the court acknowledged that it could use Petitioner's proffer statements to sentence Petitioner to up to 235 months, the court chose not to do so. Therefore, Petitioner did not suffer any prejudice from the alleged improper use of his proffer statements.

The court finds that Petitioner's contention that he was improperly coerced into accepting a 120 month recommendation by Respondent in exchange for certain waivers by Petitioner, or risk receiving a sentence up to 255 months, is without merit. The government did not act improperly in negotiating a new agreement subsequent to Petitioner's failure of the polygraph. Petitioner stipulated that he failed a polygraph examination. *See* Amend. Adden. Pl. Agmt. at ¶ 1. As a result: 1) Respondent was not obligated to withdraw the sentencing enhancement based upon Petitioner's

16

prior conviction as it had agreed in ¶¶ 11-12 of the plea agreement, and 2) self-incriminating information provided by Petitioner as a result of his cooperation could be used in determining Petitioner's guidelines range, *see id.* ¶ 9. At this point, because Petitioner had no right to withdraw his plea agreement, Petitioner could either go before the court to be sentenced based upon his prior conviction and the drug weights he put on himself in the proffer, or he could attempt to come to a new agreement with the government. Petitioner agreed to waive certain rights in the amended addendum to the plea agreement in exchange for Respondent recommending to the court that he receive a 120 month sentence as opposed to a higher sentence within the guidelines range as calculated using the drug weights Petitioner put upon himself in his proffer. Although Petitioner is unhappy with the choice he was presented with, it was entirely the result of Petitioner's failure of the polygraph examination in violation of the plea agreement Petitioner entered into. Therefore, counsel was not ineffective for failing to object to Respondent's actions in negotiating a new agreement with Petitioner. Respondent is entitled to summary judgment on this ground.

    4.      <u>Failure to File Notice of Appeal</u>

Petitioner contends that counsel was ineffective for failing to file an appeal as Petitioner requested. An attorney who fails to file an appeal after being instructed to do so by his client is *per se* ineffective. *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000); *see also United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993). "Counsel is not absolved of his duty to file a requested notice of appeal by a waiver of appeal rights in a plea agreement." *United States v. Glover*, 363 F. App'x 989 (4th Cir. 2010) (citing *United States v. Poindexter*, 492 F.3d 263, 271-73 (4th Cir. 2007) ("an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests.").

A dispute exists as to whether Petitioner indicated that he wanted counsel to file an appeal on his behalf. Petitioner contends in his Petition and motion for summary judgment that "Counsel was ineffective when he failed to file a Notice of Appeal as requested by the Defendant." Entry 59 at 6; *see also* Entry 108 at 7. Petitioner contends that "[i]mmediately after Sentencing, Counsel made it clear to the Defendant that the Sentence should be appealed because of the amended Plea Agreement," but "failed to file the proper Notice." Entry 59 at 6. Counsel states via affidavit that he "reviewed the facts and circumstances surrounding the plea with [Petitioner]" and advised Petitioner that "the filing of an appeal would be considered a breach of the Plea Agreement Addendum." *Id.* ¶¶ 3-4. Counsel also states: "at no time did Defendant request that counsel file an appeal on his behalf." *Id.* ¶ 5.

"[I]t is not *per se* error for a district court to make credibility determinations on the basis of conflicting affidavits." *United States v. Santana*, 263 F. App'x 334, 335 (4th Cir. 2008) (citing *Strong v. Johnson*, 495 F.3d 134, 139-40 (4th Cir. 2007)). However, a district court should hold a hearing on a § 2255 claim if it is unclear in the record whether an attorney was instructed to file an appeal. *Santana*, 263 F. App'x at 335 (citing *United States v. Poindexter*, 492 F.3d 263, 272 (4th Cir. 2007). The court concludes that in this case the record as to whether Petitioner requested an appeal is insufficiently clear to permit resolution of the issue without an evidentiary hearing.

**B.    Fully Concurrent Sentences**

Petitioner contends that the court intended to have his sentence run fully concurrently with his sentence in CR. 3:06-603, with the total term of imprisonment being 70 months. Entry 118 at 1. Petitioner further contends that although 18 U.S.C. § 3585 prevents the BOP from running his sentences fully concurrently, the court had the authority and intended to run his sentences fully

concurrently pursuant to 18 U.S.C. § 3584 and U.S.S.G. § 5G1.3(c).  Entry 118 at 1, Entry 188 at

2.

> Title 18, United States Code, Section 3584 provides in relevant part:
>
> If multiple terms of imprisonment are imposed on a defendant at the same time, or
> if a term of imprisonment is imposed on a defendant who is already subject to an
> undischarged term of imprisonment, the terms may run concurrently or
> consecutively. . . .  Multiple terms of imprisonment imposed at different times run
> consecutively unless the court orders that the terms are to run concurrently.

*Id.*  Title 18, United States Code, Section 3585 provides:

> A sentence to a term of imprisonment commences on the date the defendant is
> received in custody awaiting transportation to, or arrives voluntarily to commence
> service of sentence at, the official detention facility at which the sentence is to be
> served.
>
> . . .
>
> A defendant shall be given credit toward the service of a term of imprisonment for
> any time he has spent in official detention prior to the date the sentence commences
> . . . that has not been credited against another sentence.

*Id.*  A sentence cannot commence before it is imposed.  *Mills v. Quintana*, No. 10-3004, 2010 WL

5027166 (3d Cir. Dec. 10, 2010) (citing 18 U.S.C. § 3585(a); PS 5880.28, Ch. 1, p. 13 ("In no case

can a federal sentence of imprisonment commence earlier than the date on which it is imposed.")).

United States Sentencing Guidelines § 5G1.3 governs the imposition of sentences on

defendants who are subject to an undischarged term of imprisonment.  *Id.*  Section 5G1.3(a) provides

that for offenses committed "while the defendant was serving a term of imprisonment . . . or after

sentencing for, but before commencing service of, such term of imprisonment," the sentence will run

consecutively to the undischarged term of imprisonment.  *Id.*  Section 5G1.3(b) provides that if the

undischarged term of imprisonment is relevant conduct to the instant offense and that was the basis

for an increase in the offense level: 1) "the court shall adjust the sentence for any period of

imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and" 2) "the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment." *Id.* Section 5G1.3(c), provides that "[i]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." *Id.*

Petitioner cites *Ruggiano v. Reish*, 307 F.3d 121, 126 (3d Cir. 2002) in support of his argument that the court intended to run his sentence fully concurrently with the sentence imposed in CR 3:06-603. In *Ruggiano*, the Third Circuit held that in imposing a sentence, a federal court may grant an adjustment for time served on a preexisting sentence pursuant to § 5G1.3(c) by making the federal sentence retroactively concurrent with the preexisting sentence. 307 F.3d at 129-30. However, in 2003, Section 5G1.3's Application Notes were amended to provide that subsection (c) does not authorize a sentencing court to make an adjustment for time served on a prior undischarged term of imprisonment and that a sentencing court may consider a downward departure only in extraordinary cases. Specifically, Application Note 3(E) provides:

> Downward Departure. –Unlike subsection (b), subsection (c) does not authorize an adjustment of the sentence for the instant offense for a period of imprisonment already served on the undischarged term of imprisonment. However, in an extraordinary case involving an undischarged term of imprisonment under subsection (c), it may be appropriate for the court to downwardly depart. This may occur for example, in a case in which the defendant has served a very substantial period of imprisonment on an undischarged term of imprisonment that resulted from conduct only partially within the relevant conduct for the instant offense. In such a case, a downward departure may be warranted to ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentencings. Nevertheless, it is intended that a departure pursuant to this application note result

in a sentence that ensures a reasonable incremental punishment for the instant offense of conviction.

To avoid confusion with the Bureau of Prisons' exclusive authority provided under 18 U.S.C. § 3585(b) to grant credit for time served under certain circumstances, the Commission recommends that any downward departure under this application note be pursuant to 5G1.3(c), rather than as a credit for time served.

U.S. Sentencing Guidelines § 5G1.3 App. Note 3(E). This application note became effective November 1, 2003, before Petitioner was sentenced for either of his federal convictions. Moreover, the Third Circuit has subsequently held that *Ruggiano* has been abrogated by Application Note 3(E). *See Escribano v. Schultz*, 330 F. App'x 21, 23 (3d Cir. 2009); *United States v. Destio*, 153 F. App'x 888, n.6 (3d Cir. 2005).

The Historical Notes to the Sentencing Guidelines for Amendment 660 indicate that Application Note 3(E) was intended to "address[] a circuit conflict regarding whether the sentencing court may grant 'credit' or adjust the instant sentence for time served on a prior undischarged term covered under subsection (c)." The Historical Notes to Amendment 660 state: "The amendment makes clear that the court may not adjust or give 'credit' for time served on an undischarged term of imprisonment covered under subsection (c)." U.S.S.G. App'x C Vol. II, Amendment 660. Courts may downwardly depart in subsection (c) cases only in "extraordinary case[s], in order to achieve a reasonable punishment for the instant offense." *Id.* The Fourth Circuit has ruled that 5G1.3(c) "does not authorize a downward departure for the instant offense for a period of imprisonment already served on the undischarged term of imprisonment," *United States v. Mathis*, 340 F. App'x 866, 867 (4th Cir. 2009), unless such a departure "is necessary to 'ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentencings.'" *United States v. Baldwin*, 396 F. App'x 926, 928 (4th Cir. 2010).

21

Although the court imposed Petitioner's sentence to run concurrently with the sentence imposed in CR 3:06-603, unlike in *Ruggiano*, the judgment, statement of reasons and sentencing transcript reveal no intention to give Petitioner "credit" for the time he had already served on the sentence imposed in CR 3:06-603. Indeed, the court had no authority to give Petitioner such "credit" in the absence of extraordinary circumstances. Petitioner makes no argument as to why his case is extraordinary such that a downward departure under § 5G1.3(c) would have been appropriate, nor could he in these circumstances. Unlike the example given in Application Note 3(E), at the time of sentencing, Petitioner had not served "a very substantial period of imprisonment on an undischarged sentence that resulted from conduct only partially within the relevant conduct for the instant offense." Although Petitioner had served fifteen out of eighteen months of his sentence in 3:06-603, this sentence resulted from conduct irrelevant to the instant offense. Accordingly, the court did not give Petitioner a downward departure for the instant offense for the period of imprisonment Petitioner had already served in CR 3:06-603.

## IV. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases, as effective December 1, 2009, provides that the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*,

22

252 F.3d 676, 683-84 (4th Cir. 2001). The court concludes that Petitioner has not made the requisite

showing. Accordingly, the court denies a certificate of appealability.

## V. CONCLUSION

Based upon the foregoing, Respondent's motion for summary judgment (Entry 74) is **granted**

except with respect to defense counsel's alleged failure to file an appeal.  The court holds in

abeyance a ruling on this issue pending an evidentiary hearing.  The court will hold an evidentiary

hearing in accordance with Rule 8 of the Rules Governing § 2255 Proceedings to determine whether

Petitioner indicated to defense counsel that he wanted an appeal filed on his behalf. Counsel shall

be appointed under 18 U.S.C. § 3006A, as provided by Rule 8. A notice of hearing will be issued

from the Office of the Clerk of Court.  Petitioner's motion for reconsideration (Entry 118) is **denied**.

**IT IS SO ORDERED.**


s/ Margaret B. Seymour
The Honorable Margaret B. Seymour
United States District Judge

April 8, 2011
Columbia, South Carolina